No. 83-21

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

JAMES CAVANAUGH,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Joel G. Roth, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Steven E. Hagerman, Great Falls, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
J. Fred Bourdeau, County Attorney, Great Falls,
Montana

Submitted on Briefs: August 25, 1983

Decided: December 23, 1983

Filed: DEC 23 1983

*Ethel M. Harrison*

Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Defendant James Cavanaugh appeals the November 22, 1982, order of the District Court of the Eighth Judicial District, Cascade County, denying his petition for post-conviction relief.

On August 9, 1977, Cavanaugh and co-defendant Sam Spicer were each charged by information with four felony offenses: count I, deceptive practices; count II, attempt (deliberate homicide); count III, aggravated kidnapping; and count IV, aggravated assault. Pursuant to a plea bargaining agreement, each defendant pled guilty on August 15, 1977, to counts III and IV. Once the guilty pleas were accepted, and, upon motion of the county attorney, counts I and II against both defendants were dismissed.

Cavanaugh and Spicer were each sentenced on September 19, 1977 to 100 years for aggravated kidnapping and to 20 years for aggravated assault, the maximum penalties for each offense. Further, pursuant to section 46-18-202(2), MCA, enacted July 1, 1977, the trial judge ordered that Cavanaugh and Spicer were both ineligible for parole or for participation in the prisoner furlough program. Co-defendant Spicer has since died.

James Cavanaugh and James Mesler thereafter filed an original application for a writ of habeas corpus in this Court, challenging the constitutionality of section 46-18-202(2), MCA, on several grounds: equal protection; due process; vagueness; and as being an unlawful delegation of legislative authority. We held the statute to be constitutional on August 14, 1980. See Cavanaugh and Mesler v. Crist (1980), 615 P.2d 890, 37 St.Rep. 1461.

Now, in this appeal of the trial court's denial of his petition for post-conviction relief, Cavanaugh asserts that his pleas of guilty to the aggravated kidnapping and aggravated assault charges were not made knowingly, voluntarily, intelligently or with any understanding of their consequences for two reasons:

1. He was not told that pursuant to section 46-18-202(2), MCA, he might be denied parole or participation in the furlough program; and

2. He did not understand what was transpiring when he pled guilty.

As we are persuaded by reason one, we find it unnecessary to address reason two.

Defendant was denied parole and participation in the furlough program pursuant to section 46-18-202(2), MCA, which states in relevant part:

> "(2) Whenever the district court imposes a sentence of imprisonment in the state prison for a term exceeding 1 year, the court may also impose the restriction that the defendant be ineligible for parole and participation in the supervised release program while serving his term."

It is undisputed that the possibility of being ineligible for parole or participation in the furlough program was not mentioned by either the trial judge or the county attorney until the sentencing hearing. Cavanaugh testified at his post-conviction hearing that he had never been told by his attorney or anyone else, that if he pled guilty, he might be denied parole. Cavanaugh's original attorney testified at that same hearing that he did not recall whether he informed Cavanaugh of that possibility.

Despite extensive efforts to do so, that attorney was unable to locate Cavanaugh's case file. There is no evidence

3

contradicting defendant's claim that he was first informed of the possibility that he might be denied parole at the sentencing hearing.

Section 46-16-105(1), MCA states:

"Plea of guilty. (1) Before or during trial, a plea of guilty may be accepted when:
(a) the defendant enters a plea of guilty in open court; and
(b) the court has informed the defendant of the consequences of his plea and of the maximum penalty provided by law which may be imposed upon acceptance of such plea."

Defendant pled guilty in open court after being informed of the maximum penalties for each count. However, defendant contends that failure to inform him prior to the entry of his guilty pleas of the possibility that he might be denied parole constitutes failure to inform him of a consequence of his plea. Therefore, the trial court should not have accepted his guilty pleas and he must now be permitted to withdraw them, pursuant to section 46-16-105(2), MCA:

"(2) At any time before or after judgment the court may, for good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted."

We agree.

The consequences of one's guilty plea includes, among many other things, the sentence which accompanies such a plea. "The restriction of parole and furlough program eligibility is 'a part of the sentence' by the express terms of [section 46-18-202(2), MCA] . . ." Cavanaugh v. Crist, 615 P.2d at p.893, 37 St.Rep. at p. 1464. Such a restriction has a great and profound effect upon the ultimate sentence served by a defendant.

". . . the unavailability of parole directly affects the length of time an accused will have to serve in prison. If parole is unavailable, the

4

mandatory period of incarceration under a given sentence is three times as long . . . It would seem that such a major effect on the length of possible incarceration would have great importance to an accused in considering whether to plead guilty.

". . .

"The danger is that the accused makes his decision to plead guilty underestimating by a factor of three the risk of prolonged mandatory incarceration." Bye v. United States (2nd Cir. 1970), 435 F.2d 177 at p. 180.

Here, defendant knew when he pled guilty that he could be sentenced to a maximum of one-hundred years for aggravated kidnapping and twenty years for aggravated assault. He did not know that he might be found ineligible for parole. A flat sentence of one-hundred years is far different than the sentence anticipated by a defendant who knows he might be sentenced to one-hundred and twenty years, but presumes that parole will be possible. Because of the disparity between the anticipated and actual sentence, the plea bargain into which defendant thought he was entering was not the plea bargain accepted by the trial judge.

Federal trial courts are required to allow a defendant to withdraw his guilty plea if the trial judge refuses to accept the remainder of the plea bargain. Federal Rule of Criminal Procedure 11(e)(4) provides:

"(4) Rejection of a plea agreement. If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court . . . that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw his plea, and advise the defendant that if he persists in his guilty plea or plea of nolo contendere the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement."

The American Law Institute adopted a nearly identical rule:

"Sentencing Following Plea.

"If, at the time of sentencing, the court for any reason determines to impose a sentence more severe than that provided for in a plea agreement between the parties, the court shall inform the defendant of that fact and shall inform the defendant that the court will entertain a motion to withdraw the plea . . ." The ALI, A Model Code of Pre-Arraignment Procedure, Section 350.6 (Adopted May 20, 1975).

The American Bar Association also agrees. The ABA Standards Relating to The Administration of Criminal Justice: The Function of the Trial Judge, section 4.1(c),(1974), provides:

"Role of the judge in plea discussions and plea agreements.

" . . .

"(c)    If the plea agreement contemplates the granting of charge or sentence concessions by the trial judge, he should:

"(i)    unless he then and there grants such concessions, inform the defendant as to the role of the judge with respect to such agreements, as provided in the following subparagraphs;

"(ii)    give the agreement due consideration, but notwithstanding its existence reach an independent decision on whether to grant charge or sentence concessions; and

"(iii)    permit withdrawal of the plea (or, if it has not yet been accepted, withdrawal of the tender of the plea) in any case in which the judge determines not to grant the charge or sentence concessions contemplated by the agreement."

And, The ABA Standards Relating to the Administration of Criminal Justice: Pleas of Guilty, section 3.3(b) (1974), states:

"Responsibilities of the trial judge.

" . . .

"(b)    If a tentative plea agreement has been reached which contemplates entry of a plea of guilty or nolo contendere in the expectation that other charges before that court will be dismissed or that sentence concessions will be granted, upon request of the parties the trial judge may permit

the disclosure to him of the tentative agreement and the reasons therefor in advance of the time for tender of the plea. He may then indicate to the prosecuting attorney and defense counsel whether he will concur in the proposed disposition if the information in the presentence report is consistent with the representations made to him. _If the trial judge concurs, but later decides that the final disposition should not include the charge or sentence concessions contemplated by the plea agreement, he shall so advise the defendant and then call upon the defendant to either affirm or withdraw his plea of guilty or nolo contendere._" (Emphasis added.)

Finally, the concept of "fairness" has been added by the United States Supreme Court to the "voluntary and knowing" test used to determine whether a defendant should be allowed to withdraw a guilty plea. Santobello v. New York (1971), 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427. We therefore adopt the previously discussed standards of the American Bar Association and F.R.Civ.P. 11(e)(4), and require the trial judge, who accepts a plea but rejects any other portion of the plea bargain, to afford the defendant the opportunity to withdraw his guilty plea and enter a plea of not guilty.

The decision in this case shall have prospective application only. The decision applies to defendant James Cavanaugh and all who are sentenced after the effective date of this decision. In support of this prospective holding, see State v. Campbell (1979), 182 Mont. 521, 597 P.2d 1146.

With respect to defendant Cavanaugh, more than six years have elapsed since sentencing. It would be unfair to the state to allow withdrawal of the plea if crucial witnesses are not now available. Therefore, on remand we direct that the state can elect to have (1) defendant sentenced in accordance with the plea bargain or (2) defendant withdraw his plea of guilty with the state being allowed to revive the dismissed charges. Such a procedure has been followed by

7

other courts. See State v. Williams (1971), 107 Ariz. 421, 489 P.2d 231.

The order of the District Court denying defendant's petition for post-conviction relief is reversed. This cause is remanded to the District Court for further proceedings in conformance with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

8

Mr. Justice Daniel J. Shea, concurring in part and dissenting in part:

I join in the opinion insofar as we have now adopted meaningful standards for permitting a defendant to withdraw a guilty plea if the district judge does not abide by the plea bargain. Justice requires this. I do not, however, agree that the decision should have prospective application only, nor do I believe that the State should have the option of going along with the plea bargain or going to trial on the charges that were dismissed.

Due process requires that defendants be permitted to withdraw their pleas where they were not given the chance to withdraw their plea on the trial court refusing to go along with the plea bargain. Due process also requires that the right to withdraw that plea should not depend on the fortuitious circumstances of whether the plea was entered before or after our decision.

Nor do I agree that the State should have the option on remand of dictating to defendant whether he will go to trial again or whether he must content himself with the benefit of the plea bargain. It is not defendant who caused the procedural situation lacking in due process, and it should not be the defendant who must await his fate at the hands of the prosecution. Rather, fairness requires that the choice of obtaining the benefit of the plea bargain or going to trial on revived charges, should belong to the defendant.

_____
                Justice

- 9 -

Mr. Justice L.C. Gulbrandson dissenting.

I respectfully dissent.

In my view, the majority has departed from longstanding practice and has adopted a new Rule of Criminal Procedure. The majority declares, "We therefore adopt the previously discussed standards of the American Bar Association on F.R.Civ.P. 11(e)(4), and require the trial judge, who accepts a plea, but rejects any other portion of the plea bargain, to afford the opportunity to withdraw his guilty plea and enter a plea of not guilty."

The adoption of this rule goes far beyond the issue raised on this appeal. Counsel for defendant Cavanaugh has not contended that the sentencing judge rejected any portion of the plea bargain and has not argued or suggested that the above standards be adopted by this Court.

The sole issue was "That Defendant's Guilty Plea was not done voluntarily, intelligently, knowingly and with an understanding of the consequences of his plea and therefore should be vacated." The main thrust of defendant's argument is that he was not told, until just prior to sentencing, that the sentencing judge could declare him ineligible for parole, or for the prison furlough system, and therefore, he did not understand the consequences of his guilty plea.

Section 46-16-105, MCA, states that the plea of guilty may be accepted when the court has informed the defendant of the consequences of his plea. Other courts have distinguished between direct consequences of the guilty plea, of which the defendant must be told, and those collateral consequences of the guilty plea, of which the defendant need not be told in order for his guilty plea to be valid. Durant v. United States (1st Cir. 1969), 410 F.2d

689; Spradley v. United States (5th Cir. 1970), 421 F.2d 1043. Ineligibility for parole was not a direct and necessary corollary to Cavanaugh's guilty plea. Ineligibility for parole was a "consequence" of the serious nature of the crimes Cavanaugh committed and his prior record of five felony and ten misdemeanor convictions as set forth in the pre-sentence report.

Parole and participation in the supervised release program, both of which relate to punishment, are privileges--matters of grace, not rights. Lopez v. Crist, (Mont. 1978), 578 P.2d 312, 314, 35 St.Rep. 622, 624; Petition of Hart (1965), 145 Mont. 203, 206, 399 P.2d 984, 985. When Cavanaugh earlier challenged the constitutionality of Section 46-18-202(2), MCA, this Court answered: "The district judges did not deprive petitioners of a right when they decided that petitioners should be imprisoned with no possibility of parole or participation in the furlough program. The district judges withheld grace." Cavanaugh v. Crist (Mont. 1980), 615 P.2d at 895, 37 St.Rep. at 1466. Cavanaugh was told of the maximum possible punishment, but argues that he should have been told that maximum meant maximum and that there was a possibility that legislative grace of actually serving a lesser amount of time might be withheld.

The issue presented by Cavanaugh's appeal is similar to that addressed in State v. McGuire, No. 82-156-M (D. Mont. filed April 27, 1983.) In McGuire, the question presented to the Court was whether a conviction should be set aside because petitioner was unaware that his prior conviction might cause him to be designated as a dangerous offender and that such a designation would affect his eligibility for parole. The McGuire Court stated that:

> "The law is clear that a valid plea of guilty requires that the defendant be made aware of all 'the direct consequences of his plea.' Wade v. Coiner (4th Cir. 1972), 468 F.2d 1059, 1060. By the same token, it is equally well settled that, before pleading, the defendant need not be advised of all collateral consequences of his plea, or, as one Court has phrased it, of all 'possible ancillary or consequential results which are peculiar to the individual and which may flow from a conviction of a plea of guilty,.. . ." Id. at 3, n. 1.

> "The question of the designation of the defendant as dangerous or nondangerous does not arise until the time of sentencing. See Section 46-18-404, MCA. Id. at 3, n. 2."

The McGuire Court went on to state: "The problem of how a state shall designate offenders and what effect that designation shall have upon parole is solely a question for the state legislature and the state courts. There is simply no problem of federal constitutional law." Id. at 4.

The possibility of ineligibility for parole, like the possibility of designation as a dangerous offender, is a discretionary sentencing alternative. They are not direct consequences of the guilty plea and therefore the court should not be required to inform the defendant of these possibilities at the entry of the guilty plea.

I would affirm the decision of the District Judge, and would defer to the Legislature on the issue of adopting the described standards.

_____
Justice

I join with Mr. Justice L.C. Gulbrandson in the foregoing dissent.

_____
Justice

-12-