No. 88-034

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

THE STATE OF MONTANA,

    Plaintiff and Respondent,

  vs

JOSEPH RUBEN BUCKMAN,
a/k/a JOSHUA BUCKMAN,

    Defendant and Appellant.

APPEAL FROM:  The District Court of the Eighth Judicial District,
              In and for the County of Cascade
              The Honorable John M. McCarvel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    E. June Lord, Great Falls, Montana

    For Respondent:

    Honorable Marc Racicot, Attorney General, Helena, Montana
    George Schunk, Assistant Attorney General, Helena
    Patrick L. Paul, Cascade County Attorney, Great Falls, Montana
    Stephen E. Hagerman, Deputy Cascade County Attorney, Great Falls

Submitted on Briefs:  December 9, 1988

Decided:  February 1, 1989

Clerk

FILED
'89 FEB 1 PM 2 14
ED SMITH, CLERK,
MONTANA SUPREME COURT
Filed

Mr. Justice William E. Hunt, Sr. delivered the Opinion of the Court.

In the Eighth Judicial District Court, Cascade County, defendant Joseph Ruben Buckman pleaded guilty to one count of deceptive practices, a felony. He received a 10-year sentence in the Montana State Prison and was designated a dangerous offender for purposes of parole eligibility. From the part of the sentence designating him a dangerous offender, Buckman appeals. We affirm.

Two issues are presented for our consideration.

1) Did the District Court abuse its discretion by designating Buckman a dangerous offender for purposes of parole eligibility?

2) Did the District Court violate the terms of the plea agreement by designating Buckman a dangerous offender?

During the night of July 2 or early morning of July 3, 1987, a car owned by Milton J. Merrick was broken into and Merrick's wallet, containing several credit cards, was stolen. On July 3, 1987, Joseph Buckman unsuccessfully attempted to use Merrick's VISA card to purchase beer and gasoline from two Great Falls area Circle K stores. Three days later, Buckman successfully purchased items from a Sinclair gas station and a Payless Shoe Store by using Merrick's Mastercard and forging his signature. On July 7, 1987, Buckman was apprehended in a stolen motor vehicle with Merrick's wallet and credit cards in his possession.

Buckman was charged with one count of deceptive practices, a felony, in violation of § 45-6-317(1)(d)(i), MCA, and one count of forgery, a felony, in violation of § 45-6-325(1)(a), MCA. Pursuant to a plea bargain, the State agreed to drop the forgery charge in exchange for Buckman's

plea of guilty to the charge of deceptive practices. Although the State reserved the right to recommend sentencing, it agreed not to pursue a designation of persistent felony offender.

At sentencing, the State recommended that Buckman receive ten years, the maximum sentence allowed by law, and that he be designated a dangerous offender for purposes of parole eligibility. The Honorable John M. McCarvel accepted this recommendation and sentenced Buckman accordingly. Buckman appeals the designation of dangerous offender.

Buckman first argues that the District Court abused its discretion by designating him a dangerous offender. He contends that a defendant convicted of a nonviolent property crime does not represent a substantial danger to society and cannot, therefore, be considered a dangerous offender.

A dangerous offender is not eligible for parole until he has served one-half of his full sentence. A nondangerous offender, in contrast, is eligible for parole after he has served one-quarter of his full sentence. Section 46-23-201(1)(a), MCA. The statute governing the designation of an offender as dangerous or nondangerous is § 46-18-404, MCA, which reads as follows:

> (1) The sentencing court shall designate an offender a nondangerous offender for purposes of eligibility for parole under part 2 of chapter 23 if:
>
> (a) during the 5 years preceding the commission of the offense for which the offender is being sentenced, the offender was neither convicted of nor incarcerated for an offense committed in this state or any other jurisdiction for which a sentence to a term of imprisonment in excess of 1 year could have been imposed; and
>
> (b) the court has determined, based on any presentence report and the evidence presented at the trial and the sentencing hearing, that the

- 3 -

offender does not represent a substantial danger to other persons or society.

(2) A conviction or incarceration may not be considered under subsection (1)(a) if:

(a) the offender was less than 18 years of age at the time of the commission of the present offense; or

(b) the offender has been pardoned for the previous offense on the grounds of innocence or the conviction for such offense has been set aside in a postconviction hearing.

(3) If the court determines that an offender is not eligible to be designated as a nondangerous offender, it shall make that determination a part of the sentence imposed and shall state the determination in the judgment. Whenever the sentence and judgment do not contain such a determination, the offender is considered to have been designated as a nondangerous offender for purposes of eligibility for parole.

Subsection (1) of this statute delineates a two-part test. If the district court finds that the defendant was neither convicted of nor incarcerated for a felony offense within the five years preceding the crime for which he is being sentenced and that the defendant does not represent a substantial danger to society, the court must designate the defendant nondangerous. However, if the defendant satisfies only one prong of this two-part test, the district court, in its discretion, may apply the dangerous offender label. See State v. Dahl (Mont. 1980), 620 P.2d 361, 365, 37 St.Rep. 1852, 1857.

When using its discretion to determine offender status, the District Court "may consider persistence in criminal conduct and failure of earlier discipline to deter or reform the defendant." State v. Nichols (Mont. 1986), 720 P.2d 1157, 1163, 43 St.Rep. 1068, 1076. The District Court must

- 4 -

articulate the reasons for designating a defendant as dangerous; "more than a mere recital of the statutory language is required." In re McFadden (1980), 185 Mont. 220, 222, 605 P.2d 599, 600.

In the present case, the District Court did indeed articulate the reasons for designating Buckman a dangerous offender. The court stated:

> The defendant, since he was 18 years old, has been involved with the criminal law. In 1979, he was given a three (3) year deferred sentence for auto theft. In 1980, he was convicted, by a jury, of Aggravated Assault and Aggravated Kidnapping, felonies, and was given two ten (10) year terms which ran concurrently and was designated a Dangerous offender. He was released from the Montana State Prison in February, 1987 and committed the crime of Deceptive Practices, a felony, by stealing and using stolen credit cards.
>
> The defendant has demonstrated no evidence or effort to rehabilitate himself and is addicted to alcohol and drugs. His incarceration is necessary for long term in-patient treatment for alcohol and drugs and for the protection of the public.

Buckman had been released from prison only five months prior to the commission of the crime leading to the present conviction. Thus, even though the instant offense was of a nonviolent nature, the District Court was not required by statute to designate Buckman a nondangerous offender. Furthermore, Buckman had been previously convicted of aggravated assault and kidnapping for holding a gun to a hostage's head. The District Court considered this prior offense as well as Buckman's failure to rehabilitate himself when it found that the dangerous offender status applied. Under the circumstances, the District Court did not abuse its discretion.

Buckman next argues that the District Court violated the terms of the plea agreement when it designated him a

dangerous offender. He apparently contends that because he was not advised by the State of the possibility that it might seek to have limitations placed on his parole eligibility, he did not enter the agreement with an understanding of the consequences of his guilty plea.

Buckman relies on State v. Cavanaugh (1983), 207 Mont. 237, 673 P.2d 482, a case very similar to his own, to support his theory. In Cavanaugh, the State agreed to drop two felony charges if the defendant pleaded guilty to two other charges. At sentencing, the trial judge gave Cavanaugh maximum penalties allowed by law and, in addition, ordered that he was ineligible for parole or for participation in the defender furlough program. We held that, as Cavanaugh was never advised of the possibility that he might be ineligible for parole, he did not enter into the agreement knowingly and voluntarily. We stated:

> [D]efendant knew when he pled guilty that he could be sentenced to a maximum of one-hundred years for aggravated kidnapping and twenty years for aggravated assault. He did not know that he might be found ineligible for parole. A flat sentence of one-hundred years is far different than the sentence anticipated by a defendant who knows he might be sentenced to one-hundred and twenty years, but presumes that parole will be possible. Because of the disparity between the anticipated and actual sentence, the plea bargain into which defendant thought he was entering was not the plea bargain accepted by the trial judge.

Cavanaugh, 207 Mont. at 241, 673 P.2d at 484. We concluded that a trial judge who accepts only a portion of a plea agreement must allow the defendant the opportunity to withdraw his guilty plea. Cavanaugh, 207 Mont. at 243, 673 P.2d at 485.

- 6 -

At the time of the _Cavanaugh_ decision, the statute governing plea agreements, § 46-12-204, MCA (1981), read as follows:

(1) The defendant shall enter a plea of guilty or not guilty to the indictment, information, or complaint. If the defendant refuses to plead to the indictment, information, or complaint, a plea of not guilty must be entered.

(2) The court may refuse to accept a plea of guilty and shall not accept the plea of guilty without first determining that the plea is voluntary with an understanding of the charge.

In 1985, the legislature amended the statute, adding subsection (3).

(3) (a) A plea bargain agreement is an agreement between a defendant and a prosecutor that in exchange for a particular plea the prosecutor will recommend to the court a particular sentence. A judge may not participate in the making of, and is not bound by, a plea bargain agreement. If a judge does not impose a sentence recommended by a prosecutor pursuant to a plea bargain agreement, the judge is not required to allow the defendant to withdraw a plea of guilty.

(b) Before a judge accepts a plea of guilty, he must advise the defendant:

(i) of all the provisions of subsection (3)(a);

(ii) of the punishment as set forth by statute for the crime charged;

(iii) that prior to entering a plea of guilty, the defendant and his counsel should have carefully reviewed Title 46, chapter 18, and considered the most severe sentence that can be imposed for a particular crime; and

(iv) that the judge may impose any sentence allowed by law.

Section 46-12-204(3), MCA. The express purpose of the amendment was to overturn the _Cavanaugh_ decision. Hearing on

HB 700 Before the House Com. on the Judiciary (Feb. 18, 1985) 49th Cong. 7.

The amendments make it clear that a plea bargain is an agreement between the prosecutor and the accused only. The district court is not bound by the agreement. If the court chooses not to follow the prosecutor's recommendation pursuant to the plea bargain, it is not required to allow the defendant to withdraw his plea of guilty. Section 46-12-204(3)(a), MCA.

The plea agreement in issue stipulated only that the State reserved the right to recommend sentencing and that the State would not seek to designate Buckman a persistent offender. It made no reference to the fact that the State might seek to limit Buckman's parole eligibility by recommending that the court declare him a dangerous offender. Buckman argues that the District Court, therefore, was required to apprise him of the possibility that his parole could be limited if the court chose to designate him as dangerous.

Section 46-16-105(1)(b), MCA, requires the district court to advise the defendant of the consequences of his guilty plea and the maximum sentence which may be imposed. Other statutes flesh out § 46-16-105(b), MCA, by outlining specific items of which the defendant must be advised by the court. They provide that the defendant must be informed that the court is not bound by the plea agreement; that sentencing is governed by Title 46, Chapter 18; that the defendant should consider the most severe punishment allowed by law; and that the judge may impose any sentence allowed by law. Sections 46-12-202 and 46-12-204(3)(b), MCA. These statutes do not require the District Court to advise the defendant of any possibility of limitations on his parole eligibility.

Buckman testified at his change of plea hearing that he understood that sentencing was solely in the discretion of the District Court; that he could receive a maximum of 10 years for his crime; that he entered the plea voluntarily; and that he was satisfied with counsel. Furthermore, as he had been declared a dangerous offender for his previous conviction, Buckman was aware of the fact that such limitations on parole exist. We cannot say, under these circumstances, that Buckman did not understand the consequences of his plea. The District Court did not err by failing to inform Buckman, before it accepted his guilty plea, of the possibility that he could be designated a dangerous offender.

We affirm the District Court.

Justice

We concur:

Justices

- 9 -