NO. 93-215

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

ANTHONY CHRIS EICHENLAUB, a/k/a Tony
Eichenlaub, and TIMOTHY JOHN CARTER,
a/k/a/ Tim Carter,

      Defendants and Appellants.



APPEAL FROM:   District Court of the Third Judicial District,
               In and for the County of Powell,
               The Honorable Byron L. Robb, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          William F. Hooks, Appellate Defender Office,
          Helena, Montana

      For Respondent:

          Hon. Joseph P. Mazurek, Attorney General,
          Carol Schmidt, Assistant Attorney General,
          Helena, Montana

          Christopher G. Miller, Powell County
          Attorney, Deer Lodge, Montana


                 Submitted on Briefs:  March 30, 1995

                      Decided:   August 15, 1995

Filed:

                              _____
                                   Clerk

FILED

AUG 15 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Justice Terry N. Trieweiler delivered the opinion of the Court.

The defendants, Anthony Eichenlaub and Timothy Carter, were charged with felony kidnapping, in violation of § 45-5-302, MCA, felony sexual intercourse without consent, in violation of § 45-5-503, MCA, and misdemeanor assault, in violation of § 45-5-201, MCA. Following presentation of the State's evidence, the District Court dismissed the charge of sexual intercourse without consent by accountability which had been filed against Eichenlaub. The defendants were found guilty of the other crimes with which they had been charged. After the jury's verdict, the District Court entered judgments of conviction, and sentenced each defendant to the Montana State Prison. The defendants appeal from the District Court's judgments and sentences. We affirm the judgments and sentences of the District Court.

The issues on appeal are:

1. Did the District Court err when it admitted evidence that Eichenlaub assaulted and injured Sue Maxie several days prior to the date of the crimes charged?

2. Did the District Court abuse its discretion when it designated the defendants dangerous offenders for purposes of parole?

3. Did the District Court appropriately consider and discuss alternatives to imprisonment for Eichenlaub?

### FACTUAL BACKGROUND

Sue Maxie and Tony Eichenlaub were involved in a turbulent and sometimes physically abusive relationship beginning approximately

in February 1992. During their relationship, Sue and Tony separated and reunited several times. From sometime in May to June 9, 1992, Sue lived with Eichenlaub on his mother's ranch near Ovando.

On approximately June 5 or 6, 1992, Sue visited her friend Sheila Welsh in Missoula. Sheila testified that at that time she noticed Sue's face was bruised and that hair was missing from the side of her head. Sue's ex-husband, Robert Maxie, testified that he also saw Sue on June 5 or 6, 1992, and observed similar bruises and missing hair. Sheila and Robert testified that they were concerned about Sue's safety because of the injuries they observed.

As a result of their concern, Sheila and Robert decided to help Sue leave the ranch. On June 9, 1992, Sheila and Robert drove Robert's car to the Ovando area on two different occasions. On their first trip, Sheila did not find anyone at the ranch, but left notes for Sue. Sheila and Robert then drove back to Missoula, where they received a telephone call from Sue. They discussed with her a plan to help her leave the ranch, and returned to Ovando to assist her. Sheila dropped Robert off at Clearwater Junction and drove to the ranch property. Sheila testified that when she arrived at the ranch, Sue opened the gate for her and then climbed into Robert's car with her. Sheila testified that Carter was also standing near the gate and advised them that they could not leave until they told Eichenlaub of their intentions.

Sheila and Sue drove to a cabin where Eichenlaub had been sleeping to advise him they were leaving. They testified that a

3

physical altercation followed, during which they were beaten by the defendants.

After this incident, Sheila testified that Carter took her outside where he assaulted her, and ultimately to a trailer where he forced her to have sexual intercourse. Sheila testified that when Eichenlaub came into the trailer, she asked him for help, but that he responded that she was getting what she deserved. Sue testified that Eichenlaub took her to the trailer where Sue observed Sheila and Carter lying naked in the bed and noticed that there was blood on Sheila's face and on the pillow.

Eventually Sue walked to the highway where she stopped a passing truck driver and asked for a ride. However, while she was climbing into the truck, Eichenlaub pulled her down from the truck and took her back to the ranch. The truck driver called 911 to report the incident at a nearby phone booth.

Robert Maxie testified that sometime during the several hours that had transpired that evening he jogged and walked from Clearwater Junction to the ranch and hid in the back of his car. Finally, Sheila and Sue were able to get into the car, left through a gate which had been recently opened, and returned to Missoula.

On June 12, 1992, Sheila and Sue traveled to Deer Lodge to report what had happened to the police. Later that day, the defendants were arrested and were subsequently charged by information with kidnapping, in violation of § 45-5-302, MCA, sexual intercourse without consent, in violation of § 45-5-503, MCA, and misdemeanor assault, in violation of § 45-5-201, MCA.

4

At trial, after the State presented its evidence, the District Court dismissed the charge of sexual intercourse without consent by accountability which had been filed against Eichenlaub. The jury found the defendants guilty of the remaining charges. The District Court entered judgments of conviction against the defendants, and designated both dangerous offenders. Eichenlaub was sentenced to the Montana State Prison for six months for assault, and six years for kidnapping. The sentences are to be served concurrently. Carter was sentenced to the same terms as Eichenlaub for the assault and kidnapping convictions, plus another four years for sexual intercourse without consent. The additional four years are to be served consecutively.

## ISSUE 1

Did the District Court err when it admitted evidence that Eichenlaub assaulted and injured Sue Maxie several days prior to the date of the crimes charged?

The defendants contend that the District Court erred when it allowed evidence of Eichenlaub's prior bad acts, because the State failed to give the defendants prior notice of its intent to offer the evidence. *State v. Matt* (1991), 249 Mont. 136, 814 P.2d 52; *State v. Croteau* (1991), 248 Mont. 403, 407, 812 P.2d 1251, 1253; *State v. Just* (1979), 184 Mont. 262, 602 P.2d 957. The four photographs at issue show that Sue was missing clumps of hair and had scratches on her face as a result of a physical altercation with Eichenlaub four days prior to the date of the acts for which the defendants were

charged. Defendants objected to the photographs, stating they were irrelevant "because it has already happened way before this incident even took place." Although they did not specifically mention Rule 404(b), M.R.Evid., we will construe their objection as based on that rule.

The State responds that the photographs were admissible as part of the *res gestae* or *corpus delicti*, but that if the court erred when it admitted the photographs, the error was not prejudicial. We agree that any error was not prejudicial.

Section 46-20-701, MCA, states, in relevant part, that "[n]o cause shall be reversed by reason of any error committed by the trial court against the appellant unless the record shows that the error was prejudicial." When prejudice is alleged in a criminal case the prejudice will not be presumed, rather, it must be established from the record that a substantial right was denied. *State v. Wells* (1983), 202 Mont. 337, 349, 658 P.2d 381, 388. In *Wells,* we also stated that the test is whether there is a reasonable possibility that the inadmissible evidence might have contributed to a conviction. *Wells*, 658 P.2d at 388 (citing *State v. LaVe* (1977), 174 Mont. 401, 407, 571 P.2d 97, 101); *State v. Bower* (1992), 254 Mont. 1, 6, 833 P.2d 1106, 1109. In *Bower,* we added that when assessing the potentially prejudicial effect of an error, we examine the totality of the circumstances in which the error occurred. If the issue involves inadmissible evidence, we will not evaluate the

evidence in isolation because that would risk magnifying the error beyond the impact it had on the verdict.    *Bower,* 833 P.2d at 1109.

With these principles in mind, and after a thorough review of the transcript, we conclude that admitting the photographs did not constitute prejudicial error.    The photographs show injuries Sue received from fights she had with Eichenlaub on June 5, 6, or 7. She testified that the photographs were taken by the police on June 12 behind the police station in Deer Lodge after Sue and Sheila reported the events that occurred on June 9.

At trial, during Sue's testimony, the State moved to admit the photographs.    The defendants, who had declined the public defender's representation to represent themselves, objected. Before the photographs were admitted, and in the presence of the jury, Carter was allowed to *voir dire* Sue regarding the photographs. Carter asked Sue, "[a]nd isn't it true that you said that on June 5th 'Tony pulled hair out of the sides of my [Sue's] head."'   Later he asked, "[o]n another time, you said that 'On June 7th Tony pulled hair out of the top of my [Sue's] head.'   Is that true?" He added, "[a]nd scratched my [Sue's] face?"   Sue responded that what Carter stated in *voir dire* was true.    After dismissing the jury and hearing arguments, the court admitted the photographs.

Before the photographs were admitted, Carter's *voir dire* explained what the photographs illustrated.    Additionally, and without objection, Sue had previously responded to one of the State's questions about the events of June 9 by stating that, "by

7

then Sheila was mad, she had seen what Tony had already done to me, the scratches on my face, the hair pulled out . ." Therefore, before the photos were admitted, and without objection by the defendants, the jury was aware of the prior attacks, the dates on which they occurred, and the nature of the injuries sustained. The photographs did not inform the jury of anything they did not already know.

Without reaching the merits of the State's *res gestae* argument, we conclude that even if the admission of evidence of Eichenlaub's earlier attacks was in violation of Rule 404(b), under the totality of the circumstances, it was not prejudicial error.

<u>ISSUE 2</u>

Did the District Court abuse its discretion when it designated the defendants dangerous offenders for purposes of parole eligibility?

We review a district court's dangerous offender designation to determine whether the district court abused its discretion. *State v. Buckman* (1989), 236 Mont. 37, 41, 768 P.2d 1361, 1363.

The defendants contend that the District Court abused its discretion when it designated them dangerous offenders because it made no findings to support such a designation, and there was no evidence to support such findings if they had been made. Based on our review of the record, and the District Court's findings in support of its judgment, we disagree.

8

The designation of an offender as either dangerous or nondangerous is governed by § 46-18-404, MCA, which provides in pertinent part:

(1) . [T]he sentencing court shall designate an offender a nondangerous offender for the purposes of eligibility for parole . . if:

(a) during the five years preceding the commission of the offense for which the offender is being sentenced, the offender was neither convicted of nor incarcerated for an offense committed in this state or any other jurisdiction for which a sentence to a term of imprisonment in excess of 1 year could have been imposed; and

(b) the court has determined, based on any presentence report and the evidence presented at the trial and the sentencing hearing, that the offender does not represent a substantial danger to other persons or society.

(Emphasis added.) This statute sets forth a two-pronged test in subparagraphs (a) and (b). If both are satisfied, a defendant must be designated nondangerous. If one or the other prong is satisfied, the district court may, in its discretion, designate the offender as dangerous for purposes of parole. *Buckman*, 768 P.2d at 1363.

In *Buckman we* stated that, "[w]hen using its discretion to determine offender status, the District Court 'may consider persistence in criminal conduct and failure of earlier discipline to deter or reform the defendant.'" *Buckman*, 768 P.2d at 1363 (quoting *State v. Nichols* (1986), 222 Mont. 71, 80, 720 P.2d 1157, 1163). The sentencing court must articulate its reasons for designating an offender as dangerous, rather than merely recite the

9

statutory language of § 46-18-404(1)*(a)* and (b), MCA. *State v. Morrison* (1993), 257 Mont. 282, 287-88, 848 P.2d 514, 517.

In each defendant's judgment of conviction and sentence, the District Court incorporated its findings of fact entered after the sentencing hearing. In its findings, the District Court set forth reasons for its dangerous offender determination.

The District court articulated numerous reasons for designating Eichenlaub as a dangerous offender. The court identified his chemical dependency problem, and the fact that despite treatment, he continued to drink and engage in unlawful acts. It referred to numerous misdemeanor convictions and a juvenile record. The District Court found that Eichenlaub's behavior during trial demonstrated a lack of remorse, disrespect for and defiance of the law and its officers, and a failure to recognize that his unlawful actions were wrong. Finally, the District Court found that he posed a threat to the public and the **victims.**

The District Court also articulated its reasons for designating Carter a dangerous offender. The court noted that he also had a chemical dependency problem, yet despite treatment, continued to drink and engage in unlawful acts. He had two prior felony convictions in 1981 and 1982. His actions in the present case involved physical abuse, restraint, and sexual intercourse without consent. The District Court found that Carter's behavior during the trial demonstrated lack of remorse, disrespect for and defiance of the law and its officers, and a failure to recognize

10

that his unlawful actions were wrong. The District Court found that he posed a threat to the public and the victims.

The District Court clearly articulated reasons in support of its determination that the defendants presented a danger to society and the victims. Its reasons are fully supported by the record. We hold that the District Court did not abuse its discretion when it designated the defendants dangerous offenders for the purposes of parole.

## ISSUE 3

Did the District Court fail to appropriately consider and discuss alternatives to imprisonment for Eichenlaub?

Eichenlaub contends that the District court failed to appropriately consider and discuss alternatives to his imprisonment in violation of §§ 46-18-201(10), -225, -104(3), and -104(2), MCA (1991), and therefore, that his sentence should be vacated and his case remanded for resentencing.

The State responds that the District Court's reasons for designating Eichenlaub a dangerous offender are sufficient to rule out alternatives to imprisonment. We agree.

To require the District Court to consider alternatives to imprisonment and specify the reasons why those alternatives were not selected after the District Court has already designated a convicted felon a dangerous offender exalts form over substance.

Of those criteria for determining whether "nonviolent" offenders should be sentenced to prison which are set forth in § 46-18-225, MCA, the most conclusive consideration is found in

11

subparagraph (1) which refers to the "needs of public safety." We conclude that the needs of public safety were adequately considered by the District Court when it set forth in its findings in support of its sentence the reasons why it considered Eichenlaub dangerous. Those findings include the following:

> (15) Anthony Eichenlaub is now 21 years of age, of low average intelligence with an 11th grade education, in good health, has never married but has three children whom he does not support, and very little work history or experience. He seems to acknowledge having a drinking and chemical dependency problem, and has previously gone through the alcohol treatment program at Galen State Hospital, but still continues to drink and create problems for himself by unlawful actions.

> (16) Mr. Eichenlaub has a lengthy juvenile record in Missoula County, including sexual intercourse without consent when he was 13 years old, and six misdemeanor convictions since becoming of age, including resisting arrest, and then a second DUI and two related misdemeanors in Lewis and Clark County while he was out on bond awaiting trial in this case. Tony's actions in this case involved physical abuse and restraint of a live-in girlfriend, Susan Maxie, and the evidence indicated he had also been physically violent toward his father.

> . . .

> (19) Neither defendant has shown any remorse whatever **to** the **victims** herein, and the attitude of both Carter and Eichenlaub in this whole proceeding has been one of disrespect for and defiance of the law and its officers, indifference to the needs of their children and families, continual complaining of the criminal justice system, unjustifiably placing the blame for what has happened to them on others, and seeing nothing wrong with their unlawful actions. As a result, and in view of their prior records, <u>the court finds both defendants pose a very real and substantial threat to the public in general, and the **victims** of the present case in particular, and that they are dangerous offenders, which was stated orally at sentencing.</u>

(Emphasis added.)

12

In addition, the court noted in its findings that both probation officers who testified at the sentencing hearing recommended prison terms for both defendants.

By these findings, the District Court did, as a practical matter, satisfy the requirements of §§ 46-18-201(10) and -225, MCA. To remand to the District Court for further findings to the same effect would be redundant and would serve no practical purpose.

For these reasons, we affirm the judgments and sentences of the District Court in their entirety.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

13