No. 98-250

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 52

STATE OF MONTANA,

Plaintiff and Respondent,

v.

LLOYD WILSON,

Defendant and Appellant.

APPEAL FROM: District Court of the Seventeenth Judicial District,

In and for the County of Blaine,

The Honorable John C. McKeon, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Edmund F. Sheehy, Jr., Cannon & Sheehy; Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; John Paulson,

Assistant Attorney General; Helena, Montana

Submitted on Briefs: November 12, 1998

Decided: March 18, 1999

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1. On March 11, 1987, Lloyd James Wilson was charged by information in the Seventeenth Judicial District Court, Blaine County, with deliberate homicide (count one) and accountability for deliberate homicide (count two). On May 14, 1987, Wilson filed an acknowledgment of waiver of rights by plea of guilty, and entered a guilty plea to both counts in accordance with the plea agreement. On May 13, 1992, Wilson filed a motion to withdraw his guilty pleas and a motion for appointment of counsel. On December 14, 1992, the District Court deemed Wilson's motion to withdraw his guilty pleas to be a petition for postconviction relief. On June 3, 1996, Wilson filed an amended petition for postconviction relief. On November 5, 1997, the District Court denied Wilson's amended petition for postconviction relief. Wilson appeals the District Court's denial of his request for postconviction relief. We affirm the judgment of the District Court.

¶2. The issue presented on appeal is whether the District Court erred when it denied Wilson's petition for postconviction relief.

FACTUAL BACKGROUND

¶3. On March 11, 1987, Lloyd James Wilson was charged by information with deliberate homicide (count one) and accountability for deliberate homicide (count two) in connection with the murders of Richard and Bernadette Cowen at a farm house in Blaine County on January 21, 1987. A codefendant, Robert Bone, was similarly charged in the same proceeding for his role in the murders. *See Bone v. State* (1997), 284 Mont. 293, 944 P.2d 734. Judge Leonard H. Langen was the original presiding judge in this case.

¶4. On May 14, 1987, after Robert Bone had pled guilty to charges pursuant to a plea agreement, Wilson appeared before Judge Langen with counsel, filed an acknowledgment of waiver of rights by plea of guilty, and entered a guilty plea to both counts in accordance with the plea agreement set forth in the acknowledgment. The acknowledgment states the potential punishment for each count, including the maximum punishment of death or life imprisonment. The acknowledgment also recognizes the sentence enhancement for use of a dangerous weapon which is required to run consecutively to any sentence imposed for each initial offense. *See State v. Byers* (1993), 261 Mont. 17, 861 P.2d 860, *overruled on other grounds by State v. Rothacher* (1995), 272 Mont. 303, 310, 901 P.2d 82, 86-87; *State v. Egelhoff* (1995), 272 Mont. 114, 124, 900 P.2d 260, 266. These potential sentences were reviewed

orally by Judge Langen during the hearing on Wilson's plea agreement. Judge Langen did not specifically advise Wilson at the hearing that any terms of imprisonment imposed for the two counts could be made to run consecutive to each other or that the application of "good time" earned by Wilson could in any way be limited.

¶5. The plea agreement recited in the acknowledgment shows that the State agreed not to seek the death penalty for Wilson and further agreed to recommend *concurrent* sentences of 100 years each for the two counts, and a *consecutive* sentence enhancement of two years for the use of a weapon. The acknowledgment further recognizes that the State's recommendations are not binding upon the court and that the judge is not required to allow Wilson to withdraw his guilty pleas even if the judge wishes to sentence him more harshly.

¶6. At the hearing on the plea agreement, Wilson stated that he had read the acknowledgment several times and knew it "pretty well by heart." Judge Langen reviewed the provisions of the acknowledgment with Wilson, and Wilson stated that he had consulted with his attorneys and understood the terms and conditions contained in the acknowledgment. Wilson also stated that he understood that the court is not bound by the recommendation and may make an entirely different determination as to what an appropriate and fair sentence would be under the circumstances. Judge Langen thereafter accepted Wilson's guilty pleas.

¶7. On July 6, 1987, Judge Langen sentenced Wilson to a term of 100 years at the state prison for count one, with an additional consecutive term of ten years for using a weapon during the commission of the offense. Judge Langen sentenced Wilson to a *consecutive* term of seventy-five years for count two, with a consecutive term of ten years for the use of a weapon. Judge Langen stated that he intended Wilson to serve a total of 195 years, pursuant to the applicable statutes, with no portion suspended. The judge declared Wilson to be dangerous for purposes of parole eligibility and restricted Wilson's eligibility for parole or participation in any supervised release program for the first thirty years of his sentence with no "good time" allowances to be given against the thirty-year term.

¶8. Wilson did not appeal from the sentencing order. On May 13, 1992, five years after entering his guilty pleas, Wilson filed a motion to withdraw his guilty pleas. Judge Langen deemed his motion a motion for postconviction relief. Wilson filed an

amended postconviction petition on June 3, 1996, which the District Court denied on November 5, 1997, and filed on November 7, 1997.

## DISCUSSION

**¶9. Did the District Court err when it denied Wilson's petition for postconviction relief?**

**¶10. Wilson contends that the District Court erred because Judge Langen did not properly advise him of the consequences of his guilty pleas, because Judge Langen's limitation on his "good-time" allowances was illegal, and because, contrary to the assertion of the District Court, his claims were not procedurally barred. Wilson's amended petition for postconviction relief requested that the District Court order the withdrawal of his guilty pleas or, alternatively, modify his sentences. Wilson urges this Court to reverse the District Court's denial of his petition for postconviction relief and remand this matter for modification of his sentence.**

**¶11. The standard of review of a denial of postconviction relief is whether substantial evidence supports the findings and conclusions of the district court. *See State v. Sheppard* (1995), 270 Mont. 122, 127, 890 P.2d 754, 757 (citing *State v. Barrack* (1994), 267 Mont. 154, 159, 882 P.2d 1028, 1031). We review a district court's findings to determine if they are clearly erroneous, and the district court's conclusions to determine if the court correctly interpreted the law. *See Bone v. State* (1997), 284 Mont. 293, 302-03, 944 P.2d 734, 740.**

**¶12. Section 46-16-105(1)(b), MCA (1985), governed the entry of guilty pleas at the time Wilson's guilty plea was entered. That statute provides that "[b]efore or during trial, a plea of guilty may be accepted when . . . the court has informed the defendant of the consequences of his plea and of the maximum penalty provided by law which may be imposed upon acceptance of such plea." We have interpreted § 46-16-105 (1)(b), MCA (1985), as requiring the district court to advise the defendant of the consequences of his guilty plea and the maximum sentence which may be imposed. *See State v. Buckman* (1989), 236 Mont. 37, 43, 768 P.2d 1361, 1365. Wilson argues that he was not properly advised of the maximum penalty because the District Court did not inform him that he could receive *consecutive* sentences for both counts and for the use of a weapon, amounting to a possible cumulative maximum sentence of 220 years. Upon review of the record, we reject Wilson's argument for several**

reasons.

**¶13. First, the acknowledgment that Wilson signed clearly advises him of the maximum punishment provided by law for deliberate homicide and for accountability for deliberate homicide. The acknowledgment also contains sufficient language to inform Wilson that he could receive consecutive sentences. Because the sections of the acknowledgment which describe the potential punishment for each count are set forth in separate paragraphs, they are sufficient to have informed Wilson that there was a separate potential punishment of up to 100 years for each offense. Following these paragraphs there is a provision which recites the additional sentence of up to ten years for committing an offense with a dangerous weapon. That provision states that the additional sentence will "run consecutively to the sentence imposed for the initial offense." Because Wilson pled guilty to committing two initial offenses, the language "<u>the</u> initial offense" in this provision necessarily implies that the additional punishment possible for the use of a dangerous weapon is attached to <u>each</u> initial offense. (Emphasis added). We agree with the District Court that the acknowledgment form itself is sufficient to have informed Wilson that because he committed two separate offenses, he was subject to potential punishment for each offense and an additional potential punishment for the use of a dangerous weapon in each offense.**

**¶14. Following the recital of potential punishments and the trial rights which Wilson waived by his guilty plea, the acknowledgment sets forth the State's agreed sentencing recommendations. The State agreed to recommend that Wilson "be sentenced to a period of 100 years . . . on each count" with "each of these sentences . . . to run concurrently with the other." This language is clear and it unambiguously states the recommendation that "each sentence" run "concurrently." The State's recommendation in the plea agreement is important since without it the State may well have urged the court to "otherwise order" the sentences to run _consecutively_, as § 46-18-401(4), MCA (1985), permits.**

**¶15. Second, Wilson's awareness of the possibility of consecutive sentences is evidenced by the use of both terms, "concurrent" and "consecutive," in his acknowledgment. In the acknowledgment, the State recommended "concurrent" sentences on the initial offenses, and a "consecutive" sentence enhancement for the use of a dangerous weapon. Used in this manner, the language of the acknowledgment itself shows the distinction between the two terms and the two types**

of sentences.

¶16. Third, Judge Langen's colloquy at the plea agreement hearing removes any remaining doubt as to whether Wilson was made aware of the sentencing possibilities. The judge correctly stated the punishment for each count, including a possible sentence of death or life imprisonment. After reciting the punishment for count one, Judge Langen stated that if Wilson pled guilty to count two, "the statute provides for the same punishment - exactly the same punishment." Judge Langen then addressed the sentence enhancement for the use of a dangerous weapon. At no time did the judge advise Wilson that the total possible sentence for the crimes charged was only 110 years. The only reasonable conclusion to be made from the language of the acknowledgment and transcript of the hearing was that Wilson could possibly receive 100 years, plus an additional ten years, on each count.

¶17. We have held that a written acknowledgment, combined with oral questioning of the defendant, constitutes adequate interrogation. *See State v. Johnson* (1995), 274 Mont. 124, 907 P.2d 150; *State v. Duff* (1993), 262 Mont. 288, 865 P.2d 238. In this case, the specific terms of the acknowledgment of waiver of rights, together with Judge Langen's colloquy at the hearing, were sufficient to have informed Wilson of the maximum sentence for each count and the possibility of consecutive terms of imprisonment. Because Judge Langen did not incorrectly state the total possible years of punishment, this case is distinguishable from *State v. Brown* (1993), 262 Mont. 499, 865 P.2d 282.

¶18. In *Brown*, the original trial judge, upon entry of the defendant's guilty pleas, incorrectly advised the defendant that the maximum total punishment possible pursuant to the charge was thirty years. The defendant was ultimately sentenced to forty years. Upon review, we concluded that the defendant had not been properly advised of the maximum punishment at the time he entered his guilty pleas and that the sentence should be modified accordingly. In the present case, we decline to apply the holding in *Brown* because Judge Langen did not mislead Wilson by incorrectly stating the total possible years of punishment. Rather, he correctly stated the maximum possible penalty for each count.

¶19. In *State v. Buckman* (1989), 236 Mont. 37, 768 P.2d 1361, we indicated that the court need not advise the defendant beyond the specific requirements of §§ 46-16-105 and 46-12-204, MCA (1985). Section 46-12-204, MCA (1985), requires the court to

advise the defendant "of the punishment as set forth by statute for the crime charged" and that the defendant and his counsel should consider "the most severe sentence that can be imposed for a particular crime."

¶20. We conclude that Judge Langen correctly advised Wilson of the maximum possible punishment which could be imposed as a result of each plea of guilty. Judge Langen complied with the statutory requirements and no further advice concerning sentencing possibilities was required.

¶21. Next, Wilson contends that Judge Langen did not have statutory authority to restrict Wilson's right to earn "good time" against the thirty-year term during which he is ineligible for parole. Wilson cites *State v. Hatfield* (1993), 256 Mont. 340, 346, 846 P.2d 1025, 1029, in support of his contention that a district court can only impose a sentence that is provided for by statute. Wilson maintains that § 46-18-202(2), MCA (1985), contains no language that would allow a district court to restrict a defendant's right to earn "good time."

¶22. "Good time" allowances are authorized by § 53-30-105, MCA (1985), granted by the Department of Corrections, and operate as a credit on a prisoner's sentence. Wilson's total sentence of 195 years is therefore reduced by any "good time" which he is granted. Upon review of Judge Langen's sentencing order, we conclude that Wilson is not limited in earning "good time" against his sentence, but rather, his thirty-year period of ineligibility for parole is not to be reduced by any "good time" credits he receives toward his total sentence. Judge Langen's order does not affect Wilson's ability to earn "good time" based upon his good behavior and therefore the restriction is well within the court's authority pursuant to § 46-18-202(2), MCA (1985).

¶23. Finally, Wilson argues on appeal that the District Court should not have raised *sua sponte* the issue of whether Wilson's postconviction claims were procedurally barred because of his failure to directly appeal the sentencing order to this Court. *See* § 46-21-105, MCA (1985). We conclude, however, that while the District Court did suggest that the statutory procedural bar could be applied to Wilson's claims, the District Court fully discussed Wilson's claims on their merits and, therefore, contrary to Wilson's assertions, the procedural bar of § 46-21-105, MCA (1985), was not the primary or alternative basis for the District Court's decision to deny Wilson's postconviction relief.

¶24. The record in this case supports the District Court's finding that Wilson was aware of the possibility that he could be sentenced to consecutive terms of imprisonment following his guilty pleas to the separate offenses of deliberate homicide and accountability for deliberate homicide. The record also supports the District Court's finding that Wilson was sufficiently made aware that he could receive two separate additional sentences for the use of a weapon during the commission of each initial offense. Finally, the District Court correctly interpreted Judge Langen's sentence when it declined to modify the "good time" restriction on Wilson's thirty-year parole ineligibility.

¶25. Accordingly, we conclude that the findings and conclusions of the District Court which serve as the basis for its denial of Wilson's petition for postconviction relief are supported by substantial evidence. None of the District Court's findings are clearly erroneous and our review of the District Court's conclusions leads us to conclude that the court correctly interpreted the law.

¶26. The judgment of the District Court is affirmed.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

Justice W. William Leaphart, specially concurring.

¶ 27 Although I concur with the Court's conclusions that when the plea agreement and the sentencing colloquy are read together, Wilson was adequately advised that he faced a 100-year sentence on each count plus ten years on each count. However, I think the preferable approach in implementing the requirements of § 46-16-105(1)(b), MCA (1985), is to explicitly advise a defendant of the maximum penalty provided by law assuming that consecutive sentences are imposed for each count involved in the plea. For example, the defendant in this case would have been forewarned that if consecutive sentences were imposed for both counts in the plea he would be exposed to a maximum penalty of 220 years.

/S/ W. WILLIAM LEAPHART

Justice James C. Nelson joins in the foregoing specially concurring opinion.

/S/ JAMES C. NELSON

Justice Terry N. Trieweiler specially concurring.

**¶27. I specially concur with the majority opinion. While I agree with the result, I do not agree with all the reasons given for that result.**

**¶28. For example, as pointed out in the majority opinion, pursuant to § 46-16-105(1)(b), MCA (1985), and as applied by our decision in *State v. Buckman* (1986), 236 Mont. 37, 43, 768 P.2d 1361, 1365, the district court must advise a defendant of the maximum penalty provided by law before the district court can accept a guilty plea.**

In this case, had the maximum penalty for each offense been 100 years of imprisonment and the possible enhancement by ten years for use of a weapon, I believe that this statute and our prior decision would have required that the District Court advise Wilson that all periods of imprisonment could be imposed consecutively, and that the maximum term of imprisonment would, in that event, have been 220 years. The District Court did not do that, nor was that information included at any point in the acknowledgment of waiver of rights. I disagree with the majority's conclusion that "[t]he acknowledgment also contains sufficient language to inform Wilson that he could receive consecutive sentences." Wilson was told that the sentence enhancement for each offense could run consecutive to the basic sentence for each offense, but was never advised that the term of imprisonment for one offense could be imposed consecutive to the term of imprisonment for the other offense.

¶29. However, the maximum sentence provided by law for the offenses to which Wilson pled guilty was not imprisonment for a period of years. Section 45-5-102, MCA, provides the following possible sentences for deliberate homicide or deliberate homicide by accountability:

(2) A person convicted of the offense of deliberate homicide shall be punished by death as provided in 46-18-301 through 46-18-310, by life imprisonment, or by imprisonment in the state prison for a term of not less than 10 years or more than 100 years, except as provided in 46-18-219 and 46-18-222.

¶30. Punishment by death or imprisonment for life are both more severe sentences than imprisonment for a period of years, and Wilson was advised of both of those possibilities in the colloquy cited in ¶ 16 of the majority opinion. It is therefore my conclusion that without regard to the lack of any advice about the possibility for consecutive sentences, Wilson was advised of the maximum penalties provided by law for each of the offenses to which he pled guilty. For that reason, I specially concur with the majority's conclusion that the District Court's advice to Wilson satisfied the requirements of § 46-16-105(1)(b), MCA (1985).

¶31. I also concur with the remaining conclusions expressed in the majority opinion and with the reasons given therefore.

No

/S/ TERRY N. TRIEWEILER