No. 99-702

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 232

STATE OF MONTANA,

Plaintiff and Respondent,

v.

RICHARD FRANK KNOX,

Defendant and Appellant.

APPEAL FROM: District Court of the Eleventh Judicial District,

In and for the County of Flathead,

The Honorable Katherine R. Curtis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

John R. Quatman, Quatman & Quatman, Whitefish, Montana

For Respondent:

Joseph P. Mazurek, Montana Attorney General, Mark W. Mattioli, Assistant Montana Attorney General, Helena, Montana; Thomas J. Esch, Flathead County Attorney, Eric Hummel, Deputy Flathead County Attorney, Kalispell, Montana

Submitted on Briefs: October 12, 2000
Decided: November 29, 2001

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Richard Frank Knox (Knox) pleaded guilty to one count of sexual assault in violation of § 45-5-502, MCA. Prior to sentencing, Knox made a motion to withdraw his plea, pursuant to § 46-16-105(2), MCA, arguing the Flathead County Attorney's Office (the State) violated his plea agreement. The District Court denied the motion, finding no violation of the plea agreement. The court then sentenced Knox to 40 years with 18 years suspended. Knox appeals the District Court's denial of his motion to withdraw his plea. Knox also appeals the denial based on the argument that the probation officer violated the terms of the plea agreement. We affirm.

¶2 We address the following issue on appeal:

> **Did the District Court abuse its discretion when it denied Knox's motion to withdraw his guilty plea by finding that the State did not violate the plea agreement?**

¶3 We decline to address the second issue raised by Knox, whether the probation officer breached the plea agreement in his presentence investigation report (PSI), because Knox did not properly preserve this issue for appeal. Issues not raised before the trial court are not considered by this Court because it is unfair to fault the trial court on an issue it was never given an opportunity to consider. *Unified Indus., Inc. v. Easley*, 1998 MT 145, ¶ 15, 289 Mont. 255, ¶ 15, 961 P.2d 100, ¶ 15 (citing *Day v. Payne* (1996), 280 Mont. 273, 276, 929 P.2d 864, 866). Knox cites no authority to indicate that an exception to the general rule applies in this case.

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶4 On August 8, 1998, Knox was visiting his friend Jim M. (Jim)[1] in Columbia Falls, Montana. Knox was visiting for the weekend from Spokane with C., his five-year-old son. Jim and Knox went to Raceway Park and returned home late in the evening. Jim told his wife Ruth M. (Ruth) that Knox consumed seven buckets of beer at the races. Soon after returning to the house, Knox went upstairs and into the bedroom of Jim's five-year-old daughter L., where L. and C. were staying. Thinking she heard a car leave, Ruth went to

look for Knox. She then went to check on the children and when she opened the bedroom door, she observed Knox quickly get up. Knox said he was trying to get the kids to go to sleep and that C. was being a brat. Ruth also noticed L. pull her nightgown down. Ruth took L. downstairs and questioned her about what occurred upstairs. L. explained that Knox placed his fingers in her private parts ten times and kept putting her hand on his penis. Ruth had L. tell Jim what occurred. Jim and Knox went outside, Jim came back a few minutes later, told Ruth to call the police and Knox left with C. Knox was arrested on August 9, 1998, in Washington.

¶5 On August 11, 1998, Knox was charged with sexual intercourse without consent. Later, the information was amended to change the sexual intercourse without consent charge to two charges of sexual assault pursuant to § 45-5-502, MCA, with the sentence options designated by § 45-5-502(3), MCA, due to the age of the victim relative to Knox's age.

¶6 On May 24, 1999, right before opening statements at trial, Knox and the State reached an oral plea agreement regarding the charges against him. In exchange for Knox's guilty plea, the State agreed to recommend a 30-year suspended sentence and to drop the second count of sexual assault. In addition, the State indicated that Jim and Ruth (the victim's parents) would not recommend incarceration in the victim impact statement of the PSI.

¶7 After the terms of the plea were set out before the District Court, the court proceeded with the colloquy required by § 46-12-210, MCA, in order to inform Knox of his rights, options, and the consequences of his plea. During this colloquy, the District Court also informed Knox that, like the court itself, the victim's parents were not parties to the plea agreement, were not bound by it, and could change their minds at any time as far as recommending future imprisonment in the PSI. The court added that if the victim's parents did change their minds and recommend imprisonment, this fact would not suffice as grounds for withdrawal of his plea. Knox then entered his guilty plea and a sentencing hearing was set.

¶8 After receiving a copy of the PSI, Knox made a motion to withdraw his plea, arguing that the State breached the plea agreement because in the victim impact statement, both the victim's parents recommended imprisonment. The District Court heard oral argument on the motion prior to sentencing, denied the motion, and handed down its sentence. The District Court based its denial on the transcript of the colloquy it gave prior to entry of Knox's plea, in which it informed Knox that the victim's parents were not parties to the plea agreement. Knox now appeals the denial of his motion to withdraw his guilty plea.

## II. STANDARD OF REVIEW

¶9 In order for a guilty plea to be a valid waiver of numerous constitutional rights and protections, the defendant's guilty plea must be a voluntary, knowing, and intelligent choice among options. *State v. Radi* (1991), 250 Mont. 155, 159, 818 P.2d 1203, 1206 (citing *North Carolina v. Alford* (1970), 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162); *see also* § 46-12-210, MCA. The defendant must be aware of the rights waived including such rights as the right to challenge the sufficiency of the information; to object to evidence obtained in violation of law; the right to a speedy and public trial by jury; the right to effective assistance of counsel; the right to confront and cross-examine witnesses; the right to testify; the right to call and have witnesses testify; the right against self-incrimination; the right to prove guilt beyond a reasonable doubt; and the right of appeal. *State v. Yother* (1992), 253 Mont. 128, 130, 831 P.2d 1347, 1348.

¶10 A district court may permit the withdrawal of a guilty plea upon a showing of good cause. Section 46-16-105(2), MCA. The determination of good cause is discretionary and each case must be considered on its own facts. *State v. Bowley* (1997), 282 Mont. 298, 304, 938 P.2d 592, 595. A change of plea is allowed if it appears the defendant was "in ignorance of his rights and of the consequences of his act, or if influenced unduly and improperly either by hope or fear in making it, or if it appears that the plea was entered under some mistake or misapprehension." *State v. Schaff*, 1998 MT 104, ¶ 17, 288 Mont. 421, ¶ 17, 958 P.2d 682, ¶ 17. Doubts that suggest a plea is involuntary should be resolved in favor of the defendant. *Schaff*, ¶ 17. However, a plea is not involuntary simply because it was entered to avoid the possibility of a greater punishment at trial. *State v. Milinovich* (1994), 269 Mont. 68, 71, 887 P.2d 214, 216 (citing *Brady v. United States* (1970), 397 U.S. 742, 751, 90 S.Ct. 1463, 1470, 25 L.Ed.2d 747). "The fundamental purpose of allowing the withdrawal of a guilty plea is to prevent the possibility of convicting an innocent [person]." *State v. Johnson* (1995), 274 Mont. 124, 127, 907 P.2d 150, 152 (citations omitted).

¶11 This Court reviews denial of a motion to withdraw a guilty plea for abuse of discretion. *Bowley*, 282 Mont at 304, 938 P.2d at 595. We consider three factors in this review:

> 1. the adequacy of the court's interrogation at the time the plea was entered regarding the defendant's understanding of the consequences of the plea;

2. the promptness with which the defendant attempts to withdraw the plea;

3. the fact that the plea was the result of a plea bargain in which the guilty plea was given in exchange for dismissal of another charge.

*Bowley,* 282 Mont at 304, 938 P.2d at 595. Review of these factors ensures that a guilty plea meets the constitutional standard of a voluntary, intelligent, and knowing choice among options. However, this Court shows deference to a district court's determinations of credibility. *Bone v. State* (1997), 284 Mont. 293, 308-09, 944 P.2d 734, 743 (citing *State v. Blake* (1995), 274 Mont. 349, 352-53, 908 P.2d 676, 678).

## III. DISCUSSION

¶12 **Did the District Court abuse its discretion when it denied Knox's motion to withdraw his guilty plea by finding that the State did not violate the plea agreement?**

¶13 In this case, it is undisputed that the second charge of sexual assault was dismissed when Knox entered his plea and that the State recommended a 30-year suspended sentence at sentencing. Therefore, the only issue for review is whether it was an abuse of discretion for the District Court to find that the victim's parents' recommendation of additional prison time in the PSI did not breach the plea agreement and therefore did not constitute good cause for Knox to withdraw his plea. In this case, there is no written plea agreement. Therefore, in order to consider the three factors to determine whether the District Court's denial was an abuse of discretion, we reviewed the transcript of the oral proceedings in detail.

¶14 In outlining the plea agreement for the District Court, Knox's counsel stated that:

It's been indicated to us by the county attorney that the family of the victim is going to say, in the victim impact portion of the PSI . . . what the impact on the family has been, and that they will say nothing as to [prison] time and leave that up to the judge - - or to ultimate sentencing and leave that up to the judge.

This excerpt is the only record of the part of the plea agreement involving the victim's parents.

¶15 The District Court then proceeded through the steps required by § 46-12-210, MCA. As part of that colloquy, the District Court stated:

Q. Mr. Knox, the agreement that Mr. Hummel and Mr. Quatman talked about is an agreement between you and the county attorney's office. The court is not a party to that agreement and is not bound by that agreement in any way. Do you understand that?

A. Yes.

Q. The same thing is true of the [victim's parents], they're not a party to your agreement; okay? Only the parties make this agreement, and that's the State of Montana, through the county attorney's office, and you; okay? Do you understand that?

A. Yes.

Q. Okay. And, of course, you understand that sentencing is up to me?

A. Yeah.

Q. Okay.

. . .

Q. Okay. Do you also understand, Mr. Knox, that the victim's parents will be given the opportunity to make what's called a victim's impact statement, by law, which will be a part of the presentence investigation?

A. Yes.

Q. Okay. And you know that they will, in that statement, be able to describe anything that they believe is relevant with regard to this charge and its impact on them and their daughter, and that sort of thing?

A. Yeah.

Q. Okay. They may be asked whether they think you should go to prison or not. You understand that?

A. Yeah.

Q. And they may express an opinion about that; understand?

A. Yeah.

Q. Okay. It's not my intention that if--because of something that occurs between now and then, and they change their minds and say you should go to prison, it's not my intention that you be allowed to withdraw your guilty plea at that time. Do you understand that?

A. Yes.

Q. Okay. Just like if I don't go along with the recommendation, you wouldn't be allowed to withdraw your guilty plea.

A. Correct.

Q. Understand?

A. Yes.

Q. Okay. Any second thoughts or difficulties?

A. No.

. . .

Q. Okay. Other than your agreement with the county attorney's office that they will recommend a suspended sentence for you, did anyone else make you any promises to induce you to enter your plea of guilty?

A. No.

Following the complete colloquy, Knox plead guilty to the first count of sexual assault.

¶16 After the plea was entered, the probation officer prepared the PSI in accordance with §

46-18-111, MCA. Both Ruth and Jim suggested additional prison time in the PSI. The PSI reads:

> [Ruth] acknowledged that at the point when he plead [sic] guilty, she and her husband agreed not to recommend that the Defendant serve prison time in the Victim's Impact statement. Ruth said she understood that the State would not recommend probation, but would leave the sentence to the discretion of the Court. When she learned that the State would recommend a thirty-year probationary term, Ruth felt relieved of her agreement to stay silent on a prison recommendation.

> Ruth stated that she and her husband . . . wish to see the Defendant incarcerated. Ruth thought it reasonable that he be incarcerated long enough for him to complete a sex-offender program.

> . . .

> [Jim] believes that the County Attorney's Office let him down in this case, in regard to the plea agreement. [Jim] believes that the Defendant needs to complete a sex offender program in an "institution."

Based on these comments in the PSI, Knox stated in an affidavit in support of his motion to withdraw his plea, "I would have never entered a plea in this case without the promise by the [victim's parents] to **not** ask for additional jail time." (Emphasis in original.) Finally, at sentencing, after the denial of the motion for withdrawal of Knox's guilty plea, the only statement by the victim's parents regarding prison time occurred when Jim stated, "Can't let this man go."

## A. The Adequacy of the District Court's Interrogation Regarding the Consequences of the Plea

¶17 We now turn to the three factors mentioned above, to determine whether the District Court abused its discretion. Regarding the first factor, a judge's interrogation of a defendant seeking to enter a guilty plea is sufficient if the judge:

> [E]xamines the defendant, finds him to be competent, and determines from him that his plea of guilty is voluntary, he understands the charge and his possible punishment, he is not acting under the influence of drugs or alcohol, he admits his

counsel is competent and he has been well advised, and he declares in open court the fact upon which his guilt is based.

*State v. Mahoney (1994), 264 Mont. 89, 94-95, 870 P.2d 65, 69 (citations omitted). Key to the interrogation is the determination that the defendant understands and accepts the risks and consequences of a guilty plea as a voluntary, knowing, and intelligent choice among options. Radi, 250 Mont. at 159, 818 P.2d at 1206.*

¶18 In this case, Knox asserts he did not understand the consequences of his plea because of the difference between the indication from the State regarding the victim's parents and the District Court's interrogation. Knox does not dispute, however, that he was properly informed of the consequences of waiving his numerous constitutional rights. Further, Knox in no way asserts his mental capacity was impaired so that he could not understand the District Court's interrogation.

¶19 Contrary to Knox's assertions, the above excerpt from the transcript demonstrates that Knox knew the District Court was not bound by the plea agreement and could hand down a sentence different from the State's sentence recommendation. The transcript also demonstrates that Knox knew the victim's parents were not parties to the plea agreement and were free to change their minds at any time as far as recommending prison time. Further, the transcript demonstrates that Knox knew, regardless of any discussion regarding prison time in the PSI, that the victim's parents would be allowed to relay the impact on their family as part of the PSI. Knox may have hoped the victim's parents would remain silent and hoped the District Court would sentence in conformity with his plea agreement, however, the District Court's interrogation demonstrates that Knox was aware of the risks he would be taking by pleading guilty. Therefore, this factor weighs against Knox and demonstrates Knox knew and voluntarily accepted the possible consequences of his plea.

¶20 In addition to the fact that Knox knew the consequences of his plea from the District Court's thorough colloquy, we also take notice of § 46-18-115(4)(a), MCA, which requires a trial court to allow victims to voice their opinions on sentencing. This section reads:

> The court *shall* permit the victim to present a statement concerning the effects of the crime on the victim, the circumstances surrounding the crime, the manner in which the crime was perpetrated, *and the victim's opinion regarding appropriate sentencing*. (Emphasis added.)

Section 46-18-115(4)(a), MCA. The court in this case was acting according to statutory requirements when it made clear that the victim's parents could change their minds on recommending incarceration. Therefore, we hold the court did not abuse its discretion in finding the plea agreement was not breached because the victim's parents were not parties to the plea agreement and could make known their opinion on Knox's incarceration.

¶21 In addition to the fact that Knox understood the consequences of his plea, it is important to note that in laying out its rationale for sentencing, the District Court did not rely on the fact that the victim's parents recommended prison time in determining a proper sentence. The District Court took great care to point out the basis of its sentencing decision and noted that its sentence was in accord with the policies for sentencing in § 46-18-101(2), MCA. The court relied primarily on the findings in the psychosexual evaluation by Dr. Scolatti, the impact on the victim's family as described in the PSI, and Knox's prior criminal history. The District Court also assessed Knox's credibility and was concerned that Knox chose to minimize his responsibility and blame his five-year old victim for the incident in the psychosexual evaluation. This was in stark contrast to his admissions of guilt during entry of his plea and his statements in the PSI. As mentioned above, we show great deference to trial court determinations of credibility. *Bone*, 284 Mont. at 309, 944 P.2d at 743. The District Court was also particularly concerned with the parts of the psychosexual evaluation that indicated Knox has violent tendencies which present complications to successful treatment, that Knox has high-risk factors for violent recidivism, and that Knox resisted treatment for chemical dependency in the past. So while the victim's parents did request incarceration in the PSI contrary to Knox's hopes, this fact was not a determinative basis for the District Court's sentencing.

## B. The Promptness of Defendant's Motion to Withdraw a Guilty Plea

¶22 The second factor, the promptness with which the defendant attempts to withdraw a plea, is not at issue here because both parties agree that Knox's motion was prompt under our precedent. Therefore, this factor weighs in Knox's favor.

## C. The Terms of the Plea Bargain

¶23 The final factor considers whether the plea was the result of a plea bargain in which the guilty plea was given in exchange for dismissal of another charge. It is not disputed in this case that one count of sexual assault was dismissed in exchange for Knox's guilty plea and that the State recommended a 30-year suspended sentence. Rather, Knox points to the

rule that when a plea rests in any significant degree on a promise or agreement of the prosecution that was an inducement or consideration to plead guilty, the promise must be fulfilled. *Bowley*, 282 Mont at 310, 938 P.2d at 599. Knox argues the indication of silence by the victim's parents was a significant promise in the plea agreement and that breach of this promise should be considered good cause for withdrawal of his plea. He argues that if the victim's parents' promise to remain silent was not valid or enforceable, the District Court should have required the promise to be either stricken or withdrawn. Knox cites no authority for the requirements he suggests. More importantly, Knox does not explain why the District Court's actual response in this case, i.e., giving a thorough colloquy regarding the victim's parents' role, is inadequate.

¶24 That said, however, we emphasize that we will not countenance prosecutors including in plea agreements promises and provisions which are legally unenforceable or on which they know they cannot deliver. *Bowley*, 282 Mont at 310, 938 P.2d at 599. The use of such tactics to garner the defendant's plea will typically render the accused's agreement and resultant plea involuntary. The point to be noted here, however, is that Knox knew going in to his entry of plea that whatever agreement the victim's parents made about not recommending prison was not enforceable. The trial judge made that clear to him. And, he could have, at that time, decided not to go forward with his plea of guilty. As mentioned, there was no written plea agreement, so the only record of the plea agreement was the transcript of the proceedings as excerpted above. We have already determined that Knox understood the District Court's unequivocal interrogation which indicated that the victim's parents were not parties to the plea agreement and could change their minds at any time regarding sentencing. Knox also understood that the victim's parents would be able to describe the impact on their family in the PSI. Under these facts, we hold that a significant promise in the plea agreement was not breached. Therefore, this factor weighs against Knox.

## IV. CONCLUSION

¶25 After considering all three factors to determine whether Knox made a knowing, intelligent, and voluntary choice among alternatives to accept the consequences of his plea, we hold that the factors support a valid guilty plea. The plea agreement was not breached because the District Court informed Knox the victim's parents were not parties to the plea agreement and could change their minds at any time regarding incarceration, pursuant to the court's duties as specified in § 46-18-115(4)(a), MCA. Therefore, the District Court did not abuse its discretion in denying Knox's motion to withdraw his plea.

¶26 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART

1. The full names of the victim and her parents are not used in this opinion, in order to preserve their privacy.