FILED

12/30/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0290

DA 24-0290

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 303

STATE OF MONTANA,

     Plaintiff and Appellee,

  v.

FRANCISCO PADILLA-CANALES,

     Defendant and Appellant.

APPEAL FROM:   District Court of the Eighteenth Judicial District Court,
In and For the County of Gallatin, Cause No. DC-22-233B
Honorable Rienne H. McElyea, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

     Britt Cotter, Cotter Law Office, P.C., Polson, Montana

     For Appellee:

     Austin Knudsen, Montana Attorney General, Thad Tudor, Assistant
Attorney General, Helena, Montana

     Audrey Cromwell, Gallatin County Attorney, Jordan Salo, Special
Deputy County Attorney, Bozeman, Montana

Submitted on Briefs:  October 29, 2025

Decided:  December 30, 2025

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Francisco Padilla-Canales appeals from the Eighteenth Judicial District Court, Gallatin County's March 18, 2024 order sentencing him to forty years in the Montana State Prison. We restate and address the following issue:

> *Whether this Court should exercise plain error review to address Padilla-Canales's claim that the District Court's inadequate advisement rendered his plea involuntary.*

¶2 We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On July 6, 2022, Padilla-Canales[1] broke into a home where his wife, Gloryangelise Padilla Navarro, was spending the night. The couple had separated, and Navarro had begun a romantic relationship with Lesman Escobar Andara. Upon finding Navarro and Andara together in the home, Padilla-Canales stabbed Andara with a pocketknife. Navarro fled during the altercation, but Padilla-Canales caught her, brought her back inside the house, and directed her to call 911 and report the stabbing as a suicide attempt. Padilla-Canales performed CPR on Andara until emergency services arrived, but Andara died at the scene.

¶4 On July 7, 2022, Padilla-Canales was arrested and brought before the Gallatin County Justice Court for an initial appearance with no interpreter and only standby counsel. Padilla-Canales is a Spanish-speaking undocumented immigrant who came to the United States when he was nine years old, and he engaged with the Justice Court in English. Padilla-Canales was advised via a Spanish language "Advisement of Rights" video that a

---

[1] Pursuant to M. R. App. P. 2(4), we amend the caption to reflect the correct spelling of the Appellant's last name, Padilla-Canales, and to match the caption of the proceedings below.

conviction could result in losing the ability to remain in the United States. Padilla-Canales signed the minutes of his Justice Court appearance, which stated that he had been advised as follows: "FOREIGN CITIZEN MAY BE DEPORTED FROM OR DENIED ADMISSION TO THIS COUNTRY IF FOUND GUILTY OR PLEADS GUILTY TO THE CHARGE(S)."

¶5 On July 26, 2022, Padilla-Canales was charged by Information with Deliberate Homicide, Aggravated Kidnapping, Witness Tampering, and Aggravated Burglary. On August 1, 2022, Padilla-Canales appeared for arraignment before the District Court with a Spanish interpreter. Padilla-Canales pled not guilty after the District Court advised him about the charges and their potential penalties. When discussing bail conditions, the State argued that Padilla-Canales's immigration status made him a flight risk, and defense counsel advised the District Court that Padilla-Canales was subject to an immigration detainer.[2]

¶6 On January 12, 2024, Padilla-Canales appeared with a Spanish interpreter before the District Court to plead guilty to an amended charge of Mitigated Deliberate Homicide, pursuant to a nonbinding plea agreement. The District Court found that Padilla-Canales understood his rights and the possible criminal punishment for pleading guilty, but it made no specific affirmative finding that Padilla-Canales understood the immigration consequences of his plea. Although it had been 554 days since the Justice Court's immigration advisement, the District Court did not advise Padilla-Canales that a guilty plea

---

[2] The immigration detainer was referred to as an "ICE hold" in the record.

could lead to deportation or mention his immigration status. Padilla-Canales signed an Acknowledgment of Rights, but neither the acknowledgment nor the plea agreement referenced the immigration consequences of pleading guilty. The District Court questioned both Padilla-Canales and his attorney regarding "any concerns about the language barrier," confirmed that Padilla-Canales had been able to understand and communicate with his lawyers, and confirmed with Padilla-Canales's attorney that she had no concerns about the different languages and that Padilla-Canales was "fully informed in making a knowing and voluntary waiver of his rights." After questioning Padilla-Canales and his attorney regarding the adequacy of their communication and any potential language barrier, the District Court found that Padilla-Canales entered his plea voluntarily, knowingly, and intelligently.

¶7 At the March 18, 2024 sentencing hearing, the State and defense counsel acknowledged discussing Padilla-Canales's immigration status during plea negotiations. In response to District Court questioning, the State explained that a consequence of a suspended sentence was that Padilla-Canales "will likely go through the deportation hearing." The State added, "It's my understanding that ICE could pick the Defendant up at any time during our sentence, whether paroled or not, and deport him regardless of whether he's on a custodial sentence, paroled or on a suspended sentence." While requesting that the District Court follow the plea agreement, Padilla-Canales's attorney stated:

> [DEFENSE COUNSEL]: Neither party is asking that the Court put a parole restriction on Francisco.

4

TRANSLATOR: (Translates for Defendant.)

[DEFENSE COUNSEL]: *Deportation proceedings will commence immediately when he's granted parole.*

TRANSLATOR: (Translates for Defendant.)

[DEFENSE COUNSEL]: The cost of incarcerating Francisco for the full 40 years is unnecessary *where he will undeniably be returned to Honduras on the discharge of his prison sentence.*

TRANSLATOR: (Translates for Defendant.)

(Emphasis added.) Padilla-Canales later addressed the District Court to apologize to Andara's family and express regret about his actions.

¶8 Prior to imposing the sentence, the District Court observed that Padilla-Canales "is undocumented. And both parties discussed the likelihood of the federal government picking him up at some point after this Court's sentence." The District Court later added, "The Court sees little value in a suspended portion of the sentence in light of the reality of the Defendant's immigration status." The District Court sentenced Padilla-Canales to forty years in the Montana State Prison, without any parole restrictions. Padilla-Canales did not raise any objection or seek to withdraw his guilty plea at any point.

## STANDARDS OF REVIEW

¶9 This Court generally does not address issues raised for the first time on appeal. *State v. George*, 2020 MT 56, ¶ 4, 399 Mont. 173, 459 P.3d 854. However, we may exercise the common law plain error doctrine to review unpreserved claims alleging errors implicating a criminal defendant's fundamental rights. *George*, ¶ 4. The voluntariness of a plea is a mixed question of law and fact, which this Court reviews de novo for correctness.

5

*State v. Newbary*, 2020 MT 148, ¶ 5, 400 Mont. 210, 464 P.3d 999 (citing *State v. Warclub*, 2005 MT 149, ¶ 24, 327 Mont. 352, 114 P.3d 254).

**DISCUSSION**

¶10 *Whether this Court should exercise plain error review to address Padilla-Canales's claim that the District Court's inadequate advisement rendered his plea involuntary.*

¶11 Padilla-Canales argues for the first time on appeal that his guilty plea is invalid because the District Court failed to advise him that his conviction would result in deportation, in violation of § 46-12-210(1)(f), MCA. Padilla-Canales claims that absent the District Court's advisement during the change-of-plea hearing or his written acknowledgment of the immigration consequences, his plea cannot be considered voluntarily entered. The State responds that Padilla-Canales waived this issue on appeal because he did not object or move to withdraw his plea in the District Court.

¶12 We exercise plain error review sparingly, on a case-by-case basis. *George*, ¶ 5. The party seeking review must first demonstrate that the claimed error "implicates a fundamental right," and then "firmly convince" this Court that leaving the error uncorrected would cause a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process. *State v. Akers*, 2017 MT 311, ¶ 10, 389 Mont. 531, 408 P.3d 142 (citing *State v. Favel*, 2015 MT 336, ¶ 23, 381 Mont. 472, 362 P.3d 1126).

¶13 The State concedes that the District Court's failure to advise Padilla-Canales about the immigration consequences of pleading guilty, as required by § 46-12-210(1)(f), MCA,

6

implicates his fundamental rights. *See Akers*, ¶ 10. Padilla-Canales contends that plain error review is necessary because the District Court's violation of § 46-12-210(1)(f), MCA, resulted in the District Court accepting a constitutionally invalid guilty plea, which is a manifest miscarriage of justice. Padilla-Canales also argues that leaving the District Court's error uncorrected will compromise the fairness and integrity of the plea process. The State argues that no miscarriage of justice occurred because Padilla-Canales knew that deportation was a direct consequence of his guilty plea before he was sentenced and did not object or attempt to withdraw his guilty plea.

¶14     To be constitutionally valid, a guilty plea must be "voluntary" and "intelligent." *Brady v. United States*, 397 U.S. 742, 747, 90 S. Ct. 1463, 1468 (1970) (quoting *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 1711-12 (1969)); *State v. Lone Elk*, 2005 MT 56, ¶ 13, 326 Mont. 214, 108 P.3d 500, *overruled in part on other grounds by State v. Brinson*, 2009 MT 200, 351 Mont. 136, 210 P.3d 164. We determine the voluntariness of a guilty plea according to the federal standard established in *Brady*: a "plea of guilty *entered by one fully aware of the direct consequences*, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand" unless induced by threats, misrepresentation, or improper promises. *Brady*, 397 U.S. at 755, 90 S. Ct. at 1472 (emphasis added); *see Lone Elk*, ¶¶ 21-23 (adopting federal voluntariness test). Because a guilty plea involves the waiver of several constitutional rights, the record must affirmatively disclose that the guilty plea was entered voluntarily and understandingly. *Boykin*, 395 U.S. at 244, 89 S. Ct. at 1713. We consider the

7

circumstances surrounding the defendant's plea, including the adequacy of the court's interrogation of a defendant before accepting their plea. *Warclub*, ¶ 19. An inadequate interrogation can show that a defendant lacked the necessary information to make an informed decision, but "numerous other case-specific considerations may also bear on" the question of voluntariness. *Lone Elk*, ¶¶ 14, 23.[3] Any doubt regarding the voluntariness of a plea must be resolved in the defendant's favor. *Newbary*, ¶ 8 (quoting *State v. Terronez*, 2017 MT 296, ¶ 27, 389 Mont. 421, 406 P.3d 947).

¶15 Section 46-12-210, MCA, specifies the consequences that a defendant must understand before a court may accept a guilty plea. The court "shall determine that the defendant understands" the nature of the charge, the mandatory minimum and maximum penalties provided by law, and that the plea implicates specific constitutional rights held by the defendant. Section 46-12-210(1)(a)-(c), (e), MCA. The court must also "determine that the defendant understands . . . that if the defendant is not a United States citizen, a guilty or nolo contendere plea might result in deportation from or exclusion from admission to the United States or denial of naturalization under federal law." Section 46-12-210(1)(f), MCA. The defendant's understanding of the information required by § 46-12-210(1), MCA, may also be determined by the filing of the defendant's written acknowledgement of the specified information. Section 46-12-210(2), MCA. It is undisputed that the District

---

[3] The adequacy of the court's interrogation of the defendant during the plea colloquy was one of three express factors considered by courts when determining whether "good cause" existed to permit a defendant to withdraw a plea of guilty or nolo contendere under the *Huttinger* test, which we replaced with the more comprehensive federal voluntariness standard. *See Lone Elk*, ¶¶ 11-16, 22-23.

Court did not comply with § 46-12-210(1)(f), MCA, by failing to advise Padilla-Canales about the immigration consequences of pleading guilty and not confirming that he understood those consequences before accepting his plea.

¶16 Padilla-Canales argues that the District Court's statutory violation necessarily renders his plea constitutionally defective. He is correct that a court's advisement that includes all of the items in § 46-12-210(1), MCA, is constitutionally adequate. *State v. Peterson*, 2013 MT 329, ¶ 28, 372 Mont. 382, 314 P.3d 227; *State v. Otto*, 2012 MT 199, ¶¶ 18-19, 366 Mont. 209, 285 P.3d 583 (holding that advisement of rights listed in § 46-12-210, MCA, is sufficient for a constitutionally voluntary plea). But neither *Peterson* nor *Otto* established the inverse rule asserted by Padilla-Canales: that a statutorily inadequate advisement renders a guilty plea constitutionally defective. Because the advisements at issue in *Peterson* and *Otto* complied with § 46-12-210, MCA, neither case addressed the effect of an inadequate interrogation when the record does not otherwise indicate that the plea was involuntary. *Peterson*, ¶¶ 27-29; *Otto*, ¶ 19.

¶17 Padilla-Canales's circumstances are distinguishable from the several cases he cites where this Court invalidated a guilty plea partially due to an inadequate advisement. In each case, the record contained other evidence that cast doubt on the plea's voluntariness. *See State v. Enoch*, 269 Mont. 8, 15-18, 887 P.2d 175, 179-81 (1994) (rejecting plea due to incomplete advisement of constitutional rights listed in § 46-12-210, MCA (1991), lack of signed waiver of rights, defendant's conflicting testimony about his reasoning powers, and defendant's equivocation about the firmness of plea decision); *State v. Melone*,

2000 MT 118, ¶¶ 17, 20-22, 299 Mont. 442, 2 P.3d 233 (invalidating guilty plea for inadequate advisement about maximum penalty as required by § 46-12-210(1)(a)(iii), MCA, and because written acknowledgment demonstrated defendant's mistaken belief that persistent felony offender enhancement would apply only at trial); *State v. Sanders*, 1999 MT 136, ¶ 22-23, 32, 294 Mont. 539, 982 P.2d 1015 (finding good cause for withdrawal of guilty plea in part because court did not correct misinformation about lesser included offenses from defense counsel and prosecutor), *overruled in part on other grounds by State v. Deserly*, 2008 MT 242, 344 Mont. 468, 188 P.3d 1057.

¶18    Even in *Mallak v. State*, 2002 MT 35, 308 Mont. 314, 42 P.3d 794, where we acknowledged that deportation is a "life-altering consequence" of pleading guilty, it was Mallak's lack of knowledge regarding the prospect of deportation, combined with other circumstances, that raised serious doubts about the voluntariness of his plea. *Mallak*, ¶¶ 26, 29.  Mallak was never told that a guilty plea would likely result in deportation,[4] and Mallak's cognitive deficits and limited English proficiency made it unlikely that he sufficiently understood the proceedings to intelligently waive his constitutional rights. *Mallak*, ¶¶ 19-21.

¶19    Aside from the District Court's inadequate advisement, the record in this case does not cast doubt on Padilla-Canales's awareness of the immigration consequences of pleading guilty.  We agree with Padilla-Canales that mandatory deportation and permanent

---

[4] Mallak pled guilty in 1989, and courts were not required to advise non-citizen defendants about the immigration consequences of guilty pleas until 1991. *Mallak*, ¶¶ 8, 25; *see* 1991 Mont. Laws ch. 73, §§ 1-2. *Mallak* references the provision's legislative history, however, to emphasize that deportation is a life-altering consequence of a guilty plea. *See Mallak*, ¶¶ 25-26.

separation from his children and family are life-altering consequences of his guilty plea. *See Mallak*, ¶ 26. But unlike the *Mallak* defendant, who was never told of those consequences, Padilla-Canales's immigration status and the likelihood of deportation were discussed in open court during his initial appearance and at his sentencing hearing, which were fully translated for Padilla-Canales in real time. Padilla-Canales's attorney acknowledged that he was subject to an immigration detainer when discussing bail conditions at his initial hearing in District Court. At the sentencing hearing, the State and defense counsel acknowledged that they had discussed Padilla-Canales's immigration status during plea negotiations.[5] Before imposing the sentence, the District Court stated that it saw "little value in a suspended portion of the sentence in light of the reality of the Defendant's immigration status."

¶20 Unlike in *Mallak*, Padilla-Canales does not argue that a cognitive deficit or language barrier prevented him from understanding the proceedings or the statements made in open court that he was likely to be deported upon the completion of his prison sentence. After asking Padilla-Canales and his attorney about the adequacy of their communication and any potential language barrier, the District Court found that his plea was voluntarily, knowingly, and intelligently entered. Padilla-Canales's signed Acknowledgment of Rights, plea agreement, and responses to the District Court's questioning do not demonstrate that he misunderstood or was misinformed about the immigration consequences of his plea, unlike the defendants in *Melone* and *Sanders*. Despite the

---

[5] The record on appeal does not clarify whether Padilla-Canales was present for the plea negotiations.

extensive discussion about the immigration consequences at his sentencing hearing, Padilla-Canales did not object or seek to withdraw his plea. Instead, he took responsibility for his actions, expressed regret, and apologized to the victim's family. These case-specific facts do not raise doubts that Padilla-Canales was aware that pleading guilty would result in deportation. *See Brady*, 397 U.S. at 755, 90 S. Ct. at 1472; *Newbary*, ¶ 8.

¶21 Without question there may well be circumstances where a sentencing court's failure to advise a defendant at the change-of-plea hearing as to the immigration consequences of his guilty plea would call into question the voluntariness of the plea sufficient to warrant plain error review. But considering the specific facts of this case, Padilla-Canales has not firmly convinced us that leaving the District Court's error uncorrected would cause a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process. *See Akers*, ¶ 10.

## CONCLUSION

¶22 We decline to exercise plain error review to address Padilla-Canales's unpreserved claim that the District Court's inadequate advisement rendered his guilty plea involuntary. We affirm the District Court's March 18, 2024 Sentencing Order.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M BIDEGARAY
/S/ LAURIE McKINNON
/S/ JIM RICE